the assets of bankrupts, either corporations or of individuals, as are within the scope of the provisions of the United States bankrupt act." Then any member of a firm existing or dissolved may proceed against such of the members as will not join in a proceeding to have the firm declared bankrupt. In re Noonan [supra]. And if he will not so proceed, then the advantage of a discharge from his partnership debts will not be allowed him.

Lastly, it is insisted for the defendant that the plaintiff proved and filed his debt in his bankruptcy proceedings; that this was the voluntary act of the plaintiff, and by this he waived his rights against the firm.

It has been already shown that the plaintiff had the right so to prove his debt, in view of a distribution of Lane's individual estate alone, so that he might be prepared to enjoy his share of any surplus (should there be such), after the payment in full of his individual debts, and in availing himself of this privilege, I think, he lost no right as a creditor against the firm or assets of the firm, allowed him by the law.

According to the case agreed, I am for these reasons of opinion that the plaintiff is entitled to have the judgment of the justice affirmed.

---

HUDLAND (UNITED STATES v.). See Case No. 15,411.

---

# Case No. 6,828.

## The HUDSON.

[Cited in The Henry Ewbank, Case No. 6,376. Nowhere reported; opinion not now accessible.]

---

# Case No. 6,829.

## The HUDSON.

[5 Ben. 206;[1] 14 Int. Rev. Rec. 36.]

District Court, S. D. New York. June, 1871.

COLLISION ON HUDSON RIVER—VESSEL AT ANCHOR IN FOG—FERRY TRACK.

1. A United States revenue steamer came to anchor so near the track of a ferry, that, when the tide was ebb, if the ferry-boats kept far enough down to avoid her, they risked falling below the ferry slip. The steamer was requested to move further up stream, but failed to do so. The next morning was foggy, and, shortly before daylight, ferry-boat, although carefully navigated, collided with the steamer, which had failed to ring a bell, or otherwise announce her position: Held, that the steamer was improperly anchored too near the ferry track.

2. The ferry-boats were not bound to cease their trips in the fog.

3. The steamer was also in fault in failing to give some audible signal of her position.

In admiralty.

---

[1] [Reported by Robert D. Benedict, Esq., and here reprinted by permission.]

Henry E. Davies, Jr., and George S. Sedgwick, Asst. Dist. Attys., for the United States.

W. R. Beebe and Jos. C. Jackson, for claimants.

BLATCHFORD, District Judge. This is a libel filed by the United States to recover for the damages sustained by the revenue steamer Cuyahoga, owned by the United States, through two collisions which took place, on the morning of the 29th of September, 1863, shortly before daylight, between the Cuyahoga and the steam ferry-boat Hudson, in the Hudson river, near the Jersey City slip of the ferry from the foot of Montgomery street, Jersey City, to the foot of Desbrosses street, New York. The first collision took place while the ferry-boat was on a trip from New York to Jersey City. The Cuyahoga was lying anchored with her head to the north, the tide being ebb, and was struck on her starboard side, near her bow, and considerably damaged. On her next trip from Jersey City to New York, the ferry-boat struck a launch on the port side of the Cuyahoga, hanging at davits, and stove it in. There was a fog at the time.

It is claimed, on the part of the ferry-boat, that the Cuyahoga was lying in too close proximity to what was, on an ebb tide, the usual track or route of the ferry-boats from the Desbrosses street slip on the New York side to their slip at Jersey City, which is the most northerly one of the slips at the foot of Montgomery street, Jersey City. The evidence shows this to have been the fact. On an ebb tide, the boat which leaves Desbrosses street heads up against the tide and runs over pretty well to the New Jersey shore, and then drops down sideways with the tide and heads in to her slip. This makes her usual track on an ebb tide a much wider one than the width of a straight course between the two slips. If she does not pursue such course and have the free use of such track, she is carried below her slip at Jersey City, and fails to make it on the first attempt, and loses time. On the same morning on which these collisions took place, and in the same fog, and before these collisions, another ferry-boat, the Aresseoh, which was running from New York to Jersey City, on the Desbrosses street ferry, knowing that the Cuyahoga was at anchor where she was, kept so far down, in order to avoid her, as, with the ebb tide, to miss the slip at Jersey City and go below it; and the Aresseoh, on a trip to Jersey City after these collisions, on the same morning, and in the same fog, came very near colliding with the Cuyahoga, running within a few feet of her, and, in her course after that, on the same trip, the tide being ebb, dropped by her and then headed up for her slip, but missed it and went below it. These boats were entitled